UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DORIN TROFIN,

    Plaintiff,

v.                                          Case No:   2:18-cv-338-FtM-MRM

COSTCO WHOLESALE CORPORATION,

    Defendant.
_____/

## OPINION AND ORDER

Pending before the Court is Defendant Costco Wholesale Corporation's Motion for Summary Judgment, filed on February 22, 2019. (Doc. 27). Plaintiff filed a Response in Opposition on March 21, 2019. (Doc. 34). The matter is ripe for review.

### I.    FACTUAL BACKGROUND

On October 22, 2016, Plaintiff visited Defendant's Fort Myers store where he slipped and fell. (Doc. 27 at 1; Doc. 34 at 1). Plaintiff and his wife had ordered a pizza from Defendant's food court after he and his wife completed their weekly shopping. (Doc. 27-2 at 50:14-16). As Plaintiff was walking to his seat to wait for the pizza, he was "able to see the area in front of" him and did not "notice anything unusual on the floor." (*Id.* at 51:4-8). Plaintiff waited approximately ten minutes for his pizza before he stood up to retrieve it. (*Id.* at 51:15-19). He took one or two steps before he slipped on ice cream. (*Id.* at 52:9-15). Plaintiff described the ice cream as completely melted and approximately the size of "a dinner plate." (*Id.* at 55:1-20; 56:2-3). It is not entirely clear from Plaintiff's deposition testimony where the ice cream was in relation to the surrounding tables, but he stated that it was located to the right side of the table

that he and his wife occupied. (*Id.* at 54:1-15). Plaintiff did not know how the ice cream had gotten there or how long it had been there. (*Id.* at 55:10-56:6).

According to Ryan Trapp, an assistant general manager at the time of the incident, Defendant had an inspection policy and procedure at the time of Plaintiff's fall that included the use of "floor walks." (Doc. 34 at 24:6-14, 30:11-34:13). Once an hour, a "floor walker" would walk the entire premises, both inside and outside Defendant's store, inspecting the store to check the cleanliness and safety of the building. (*Id.* at 32:8-34:16). Floor walkers were responsible for completing numerous tasks during the floor walk, one of which was looking for and cleaning up spills. (*Id.* at 33:24-34:3). In addition to floor walkers, all employees were responsible for keeping an eye out for and cleaning up spills. (*Id.* at 42:22-43:6).

Mark Perrin was the employee who is alleged to have conducted the last floor walk before Plaintiff's accident. (*Id.* at 105:17-22; *see also id.* at 80). The food court area was generally the second-to-last area inspected during a floor walk, and this particular floor walk ended at 4:04 p.m. – at least sixteen minutes before Plaintiff's fall. (*See id.* at 104:14-105:18, 108:9-10). Although Mr. Trapp testified that the food court area was checked twice during a floor walk – at the beginning of the floor walk and at the end of the floor walk – Mr. Perrin testified that the food court area is *viewed* twice, but it is only *inspected* once during a floor walk. (*Compare id.* at 39:21-40:7, *with id.* at 105:1-11). Mr. Perrin stated that he did not see any substance on the floor during the inspection that day. (Doc. 34 at 113:2-6, 118:21-119:1).

James Schifflet was working as a cashier on the day of the incident and had a clear view of the area where Plaintiff fell. From the cash register, he saw Plaintiff stand up from his seat and fall a few moments later. (*Id.* at 152:7-11). Mr. Schifflet testified that he did not see anything on the floor where Plaintiff fell. (*Id.* at 165:25-166:10). He further stated that he had

no knowledge as to the last time the area of Plaintiff's fall had been inspected. (*Id.* at 168:13-16). Nor did he see any floor walk take place before Plaintiff's fall. (*Id.* at 168:17-19).

Plaintiff filed a negligence action against Defendant in state court on April 5, 2018, and the action was removed to this Court on May 14, 2018. (Doc. 1). Defendant now moves for summary judgment in its favor. (Doc. 27).

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute "is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party." *Great Am. Alliance Ins. Co. v. Anderson*, 847 F.3d 1327, 1331 (11th Cir. 2017) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it may affect the outcome of the suit under the relevant law. *Anderson*, 477 U.S. at 248.

The moving party has the initial burden of showing that no genuine dispute as to any material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party meets it burden, the burden shifts "to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.* The non-moving party must "come forward with sufficient evidence to rebut [the movant's] showing with affidavits or other relevant and admissible evidence" and cannot merely rely on "legal conclusions or evidence which would be inadmissible at trial." *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). In determining whether summary judgment is appropriate, a court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party.

*Scott v. Harris*, 550 U.S. 372, 378 (2007). "[I]f reasonable minds could differ as to the import of the evidence," summary judgment should be denied. *Anderson*, 477 U.S. at 250.

A federal court sitting in diversity must apply the substantive law of the state where the action arose. *Pendergrast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132 (11th Cir. 2010). A cause of action for negligence under Florida law comprises four elements: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) a causal connection between the breach and the resulting injury; and (4) actual damages. *Clay Elec. Co-op. Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003). Moreover, "[a] business owner owes two duties to a business invitee: (1) a duty to warn of perils that were known or should have been known to the owner and which the invitee could not discover; and (2) a duty to take ordinary care to keep its premises reasonably safe." *Denson v. SM-Planters Walk Apartments*, 183 So. 3d 1048, 1050 (Fla. 1st Dist. Ct. App. 2015) (citing *Delgado v. Laundromax, Inc.*, 65 So. 3d 1087, 1089 (Fla. 3d Dist. Ct. App. 2011)).

In the case of a premises liability action involving a transitory substance, Florida Statute § 768.0755(1) provides in part:

> (1) If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it. Constructive knowledge may be proven by circumstantial evidence showing that:
>
> (a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or
>
> (b) The condition occurred with regularity and was therefore foreseeable.

The Court notes that Defendant does not challenge Plaintiff's assertion that he slipped on melted ice cream. Moreover, the parties agree that Defendant did not have actual knowledge of

4

the dangerous condition that caused Plaintiff's fall. In fact, the only issue before the Court is whether Defendant had constructive knowledge of the dangerous condition. Defendant focuses its argument on whether "[t]he dangerous condition existed for such a length of time that, in the exercise of ordinary care, [Defendant] should have known of the condition." § 768.0755(1)(a).

In *Garcia v. Wal-Mart Stores E., L.P.*, No. 6:14-CV-255-Orl-40TBS, 2015 WL 898582, at *2 (M.D. Fla. Mar. 3, 2015), the Court surveyed Florida slip-and-fall case law that focused "on circumstantial evidence of the length of time a transient substance persisted on a business owner's floor." The Court found four primary factors driving the courts' analyses: "(1) lack of evidence indicating that a transitory substance existed, (2) evidence of how a substance ended up on the floor, (3) the condition of a substance upon discovery, and (4) evidence of the business owner's neglect in inspecting its premises." *Id.*

### III. DISCUSSION

Defendant argues that there is no evidence the ice cream was on the floor long enough to constitute constructive knowledge. (Doc. 27 at 5-7). Defendant notes that the mere existence of a substance on the floor is insufficient to create a jury question. (*Id.* at 5). Rather, Defendant argues that "the record must have additional facts to create a permissible inference about the time the foreign substance has been on the floor . . . without this evidence, a finding of negligence would be sheer speculation." (*Id.* (omission in original ) (quoting *Encarnacion v. Lifemark Hosps. of Fla.*, 211 So. 3d 275, 278 (Fla. 3d Dist. Ct. App. 2017))). Defendant contends that "the sum of Plaintiff's evidence describing the substance," *i.e.* "that after the accident he saw ice cream on the floor, but does not know how long it had been there, how it got there, or if anyone from Costco had knowledge of it," is insufficient to create a jury issue. (*Id.* at 6).

5

In response, Plaintiff argues that the record does contain sufficient facts to create a permissible inference regarding the length of time the ice cream was on the floor. First, Plaintiff asserts that the fact the ice cream was in a completely melted state permits an inference that it was on the floor long enough to melt. (Doc. 34 at 7-11).

Plaintiff further argues in opposition to summary judgment that "the mere fact" that Defendant had a policy requiring hourly floor walks and requiring all other employees to keep the premises safe, does not mean that the inspections were reasonable, and he argues that the inspection policy was, in fact, unreasonable. (*Id.* at 14). More specifically, he contends: (1) that Defendant knew "the food court area to be particularly busy with customer traffic;" (2) "that food items can, and do, make their way onto the floors;" (3) that despite this knowledge, "the food court is not formally inspected at a greater rate than the remainder of the premises;" (4) that the floor walks of the whole store "take only 30 to 45 minutes" and that the floor walk conducted prior to Plaintiff's fall took approximately 37 minutes; (5) that employees conducting floor walks are not simply looking for substances on the floor but are also required to conduct other tasks during the floor walk; and (6) that the floor walks are admittedly not "infallible." (*Id.* at 14-15). Plaintiff argues that the above-mentioned evidence is "circumstantial evidence of [Defendant's] neglect in inspecting its premises at a reasonable rate, which permissibly may establish by circumstantial evidence constructive notice in this case." (*Id.* at 15).

Upon consideration, the Court concludes that Plaintiff has met his burden of showing that a genuine dispute regarding Defendant's constructive knowledge of the ice cream exists. The length of time required to constitute constructive knowledge of a dangerous condition varies depending on the circumstances of the case. In cases involving melting substances, courts have found that a jury could infer from the substance's melted state that it was on the floor long

enough to melt and therefore constituted circumstantial evidence of constructive knowledge. For example, in *Grizzard v. Colonial Stores, Inc.*, 330 So. 2d 768, 769 (Fla. 1st Dist. Ct. App. 1976), the plaintiff brought a personal injury action against the defendant grocery store after she slipped and fell on "partially frozen, partially liquified orange juice concentrate." The trial court entered a directed verdict in the defendant's favor, but the First District Court of Appeal reversed and remanded for a new trial, holding: "A jury could find that the substance on the floor was there long enough to partially thaw. A jury could further find that the frozen concentrate was on the floor for a sufficient time to constitute notice." *Id.*

Similarly, in *Teate v. Winn-Dixie Stores, Inc.*, 524 So. 2d 1060, 1060-61 (Fla. 3d Dist. Ct. App. 1988), the plaintiff brought an action against the defendant grocery store after he slipped and fell on peas surrounded by water in the frozen food section. The jury returned a verdict apportioning 80% fault to the defendant. *Id.* at 1060. Nonetheless, the trial court granted the defendant's motion for directed verdict because the trial court concluded that the evidence had been insufficient to create a jury question as to constructive notice. *Id.* On appeal, the Third District Court of Appeal reversed with directions to reinstate the verdict and enter judgment in the plaintiff's favor. In doing so, the Court wrote:

> In addition to showing that no employee had cleaned the area for fifteen to twenty minutes before the fall, Teate presented evidence that there was some water on the floor around the peas. Teate contends that the water was there because the peas had been on the floor for some time and had thawed. The jury could believe this and find that the peas had been on the floor for a sufficient time to put Winn-Dixie on notice of the dangerous condition. Winn-Dixie counters that the water was a result of "permafrost" or ice crystals on the bag of peas that instantly melted when it hit the floor. The jury could choose to believe this argument, find the peas had fallen perhaps only seconds before the fall, and decide that there was insufficient notice.
>
> The resolution of this issue did not require the jury to build one inference on another as Winn-Dixie contends. Since it was

> established that there was some water on the floor, it was completely within the jury's province to decide why the water was there. The jury needed to draw only one inference from direct evidence to reach a decision as to the defendant's constructive notice of the condition.

*Id.* at 1061 (citations omitted); *see also Wilson-Greene v. City of Miami*, 208 So. 3d 1271 (Fla. 3d Dist. Ct. App. 2017) (affirming summary judgment in favor of defendant, rejecting plaintiff's argument that fact that soup she slipped and fell in was not hot was circumstantial evidence that soup had been on ground long enough to cool, and distinguishing those facts from cases involving melting substances); *Camina v. Parliament Ins. Co.*, 417 So. 2d 1093, 1094 (Fla. 3d Dist. Ct. App. 1982) (reversing trial court order directing verdict in defendant's favor because evidence that ice cream "was thawed, dirty and splattered, although susceptible of the inference that the plaintiff's slip and fall had created the condition, was equally susceptible of the inference that the condition existed beforehand").

Courts may also look to a defendant's inspection policy to determine whether the defendant was negligent in failing to discover the condition, but "[t]he mere existence of a policy is not enough to show that the duty is discharged." *Rubiano-Pagel v. Target Corp.*, No. 11-80539-CIV-DIMITROULEAS/SNOW, 2012 WL 13019198, at *2 (S.D. Fla. May 1, 2012). The policy must be reasonable, effective, and followed. *See, e.g.*, *Garcia*, 2015 WL 898582, at *4 (finding that evidence showed store had failed to follow its inspection policies on day plaintiff fell and finding plaintiff met her burden in opposing summary judgment "[b]ecause a business owner's failure to follow its own implemented inspection procedures constitutes circumstantial evidence of constructive knowledge"); *Gerard v. Eckerd Corp.*, 895 So. 2d 436, 437 (Fla. 4th Dist. Ct. App. 2005) (reversing summary final judgment because issues of fact existed as to whether inspection and inspection policy were reasonable); *Zimmerman v. Eckerd Corp.*, 839 So. 2d 835, 836 (Fla. 3d Dist. Ct. App. 2003) (affirming summary judgment in favor of defendant

because "[t]here was no evidence whatever as to the nature of the liquid, where it came from, or . . . how long whatever it was had [sic] been there" and because "the only specific information about any legally relevant circumstance was the unimpeached testimony of an Eckerd manager that the floor was inspected and maintained 'every five to ten minutes' before the accident").

Here, the record evidence shows that prior to Plaintiff's fall, he did not see the ice cream on which he slipped. As noted by Plaintiff in his Response in Opposition to summary judgment, although he stated that he saw "the area in front of" him as he approached his table and that he did not "notice anything on the floor," Plaintiff was not asked whether, nor affirmatively testified that, he traversed the same location where he ultimately fell nor whether he looked at the floor where he ultimately fell nor whether there was any substance on the floor in the spot where he ultimately fell. (*See generally* Doc. 27-2 at 51:1-14). Additionally, Plaintiff sat in close proximity to the location of his fall for approximately ten minutes. Based on his statements that he did not know how the ice cream ended up on the floor or when it landed on the floor, one could infer that it was already there when he sat down. Although there is evidence that shows an inspection occurred a minimum of sixteen minutes before his fall, this evidence is contradicted by Mr. Schifflet's testimony that he did not see a floor walk occur that day.

The Court finds that in viewing all facts and drawing all reasonable inferences in Plaintiff's favor, genuine disputes as to the material facts relating to constructive notice exist. A jury could reasonably infer that the fact the ice cream was melted was evidence that it had been on the floor long enough to melt. The Court disagrees with Defendant's argument that concluding the ice cream melted on the floor as opposed to somewhere else requires impermissible inference stacking. One of the cases that Defendant relies on for this argument, *Wilson-Greene v. City of Miami*, 208 So. 3d 1271 (Fla. 3d Dist. Ct. App. 2017), explicitly

9

distinguished its facts, *i.e.*, a plaintiff who slipped on cold soup, from cases involving melting substances. *See id.* at 1276 ("We conclude that where melting substances are involved, there is no need to infer the substance was previously frozen. Logic tells us that is a given."). Here, it is true that more than one inference can be drawn from the evidence: (1) the ice cream fell to the floor in a frozen state and melted; or (2) the ice cream was already melted when it fell to the floor. However, "[w]hen more than one inference can be reasonably drawn, it is for the trier of fact to determine the proper one." *Caffo v. Dillard's, Inc.*, No. 8:03-CV-2289-MSS, 2005 WL 1216965, at *1 (M.D. Fla. May 20, 2005); *see also Teate*, 524 So. 2d at 1060 (holding that jury could choose to believe plaintiff's explanation for why water was on ground or could choose to believe defendant's differing explanation and that doing so did not require inference stacking).

Additionally, a jury could conclude based on the evidence that Defendant's inspection policy, as outlined above, was unreasonable under the circumstances or that it was reasonable but not followed that day. Furthermore, while Mr. Perrin did say he saw no substance on the floor, he did not definitively state there was nothing on the floor. *See, e.g.*, *Doudeau v. Target Corp.*, 572 Fed. App'x 970, 972 (11th Cir. 2014) (distinguishing between district court's characterization of employee testimony that employee walked through "area less than four minutes before the fall and *there was nothing there*" with employee's actual testimony "that *he did not see anythin*g on the floor" (emphases added)).

### III. CONCLUSION

Based on the foregoing, the Court concludes that a genuine dispute exists as to whether Defendant had constructive notice of the dangerous condition. Accordingly, the Court hereby **ORDERS** that Defendant Costco Wholesale Corporation's Motion for Summary Judgment (Doc. 27) is **DENIED**.

**DONE AND ORDERED** in Fort Myers, Florida on April 23, 2019.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties